**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEREK MORTLAND,** | ) | **CASE NO. 1:26-CV-00952-DAP** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JUDGE DAN AARON POLSTER** |
| **v.** | ) | |
| | ) | |
| **HETA RE L.P.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

On August 31, 2026, Defendant Heta RE L.P. ("Heta") moved to dismiss the first amended complaint (ECF Doc. 7, the "FAC") filed by Plaintiff Derek Mortland ("Mortland"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "MTD"). ECF Doc. 8. Mortland filed a brief in opposition on September 28, 2026 (the "Opposition"). ECF Doc. 9. Heta filed its Reply on October 5, 2026. ECF Doc. 10. Because Mortland has not plausibly alleged concrete, particularized injury nor sufficiently pled facts to satisfy the *Twombly*/*Iqbal* standard, Heta's motion to dismiss is **GRANTED**.

## I. BACKGROUND

Mortland is a person with physical disabilities who requires the use of a wheelchair. ECF Doc. 7 at 2-3, ¶ 5. Heta is the owner and operator of a Comfort Inn located at 1421 Golden Gate Boulevard, Mayfield Heights, Ohio (the "Hotel"). *Id.* at 3, ¶ 6; *see also* ECF Doc. 8 at 3-4.

Mortland alleges that the Hotel advertised itself as "Accessible," that Mortland reserved a "1 Queen Accessible Room," and that Mortland was present at the Hotel under that reservation from October 3, 2024, through October 4, 2024. ECF Doc. 7 at 5-6, ¶¶ 12-14. While patronizing

the Hotel, Mortland "personally encountered architectural barriers which denied him the full and equal access to the property." *Id.* at 6, ¶ 15.

The FAC catalogues alleged barriers and alleged injuries in the parking lot. Cracks in the asphalt, an unmarked access aisle, and access aisles not eight feet in width allegedly prevented Mortland from "maneuvering his wheelchair safely." *Id.* at 6-7, ¶ 17(a), (b), (f). The absence of an accessible route denied "access to outdoor amenities." *Id.* at 7, ¶ 17(c). Accessible parking spaces lacked "required parking signage" so "Mortland had difficulty finding suitable accessible parking." *Id.* at 7, ¶ 17(d). The "van stall lacked a sign identifying it as van accessible." *Id.* at 7, ¶ 17(e). And access aisles allegedly were not on an accessible route to the Hotel entrance, forcing Mortland "to navigate unsafe paths, exposing him to traffic hazards and making independent access to the building more difficult and dangerous," extending travel, which caused Mortland "to suffer cervical strain and inflammation of his left and right shoulders, where he had previously experienced rotator cuff injuries." *Id.* at 7-8, ¶ 17(g).

The FAC then catalogues the following alleged barriers and alleged injuries in the public restroom. Uninsulated sink pipes "prevented Mr. Mortland from pulling under the lavatory and using it as intended due to the risk of burns or injury from contact with hot or sharp pipes." *Id.* at 8, ¶ 17(h). The paper towel dispenser's operation mechanism and the toilet seat cover dispenser were too high, so Mortland could not reach them independently, limiting his ability to maintain hygiene when using the restroom. *Id.* at 8, ¶ 17(i), (j). The toilet was not correctly placed from the side wall, and the rear grab bar did not extend past the toilet on the wide side far enough, which compromised Mortland's "safe transfer." *Id.* at 8, ¶ 17(k), (l). And clearance on the pull-side of the restroom door was insufficient, so Mortland had to "open and pull the door backwards into his

wheelchair while also reversing, causing cervical strain and inflammation of his left and right shoulders, where he had previously experienced rotator cuff injuries." *Id.* at 8-9, ¶ 17(m).

The FAC catalogues alleged barriers and alleged injuries in the breakfast area as well. The juice machine, tea bags, condiments, and bowls were allegedly beyond reach range when approached from the side, so Mortland could not access them, "limiting his participation in breakfast offerings" and "resulting in unequal service." *Id.* at 9, ¶ 17(n), (o). Dining surfaces were allegedly noncompliant, so Mortland could not dine "comfortably or safely in the breakfast area, excluding him from communal dining experiences," *id.* at 9, ¶ 17(p); could not dine or socialize, "isolating him from other guests," *id.* at 9, ¶ 17(q); and "could not position his wheelchair at tables, preventing him from eating or working comfortably," *id.* at 9, ¶ 17(r). Also, "Mortland faced barriers navigating the [breakfast] area because [the route to items and seating] was too narrow; he was unable to access food and seating and therefore had to travel outside of the nearest accessible route to the breakfast items." *Id.* at 9, ¶ 17(s).

The FAC next catalogues alleged barriers and alleged injuries in the fitness area. Inadequate floor space near the fitness equipment meant that "Mortland was unable to use fitness equipment, denying him access to health and wellness amenities." *Id.* at 10, ¶ 17(t). In addition, the FAC alleges that clearance on the pull-side of the fitness room door was insufficient, so "Mortland was unable to enter and/or exit the fitness room independently, restricting his access" and could not open the door "without great difficulty, further exasperating his shoulder strain." *Id.* at 10, ¶ 17(u).

Finally, the FAC catalogues alleged barriers and alleged injuries in the guest room. The curtain rod was too high for a side approach and required "tight grasping, pinching, or twisting of the wrist," so Mortland could not operate the curtains, "limiting his control over privacy and

lighting." *Id.* at 10, ¶ 17(v), (w). A desk obstructed the floor near the climate control unit so Mortland could not access the unit, "affecting his comfort and independence." *Id.* at 10, ¶ 17(x). The guest room door's clearance on the pull-side was insufficient, which meant Mortland had to "pull the door backwards into his wheelchair while also reversing, again causing inflammation of his shoulders." *Id.* at 10-11, ¶ 17(y). The toilet's flush handle was located such that "Mortland was unable to flush the toilet without straining his upper body to reach across the toilet to flush it therefore compromising his dignity and hygiene." *Id.* at 11, ¶ 17(aa). The towel bar was too close to the grab bar, compromising Mortland's ability to use the grab bar. *Id.* at 11, ¶ 17(cc). The shower lacked a permanent seat, and the Hotel provided a portable seat, which meant "Mortland could not shower safely or independently, denying him basic hygiene." *Id.* at 11, ¶ 17(dd), (ee). Mortland also allegedly could not reach the shower controls, "preventing independent use" and "making the shower unusable." *Id.* at 11, ¶ 17(ff), (gg). The toilet location and bed clearance hindered safe transfer. *Id.* at 11, ¶ 17(bb), (hh). Lastly, an informational sign's characters were less than 5/8 of an inch tall. *Id.* at 11, ¶ 17(z).

Mortland also alleges that (1) there "were not enough accessible rooms designed with mobility features, in violation of 2010 ADAS 224.2," *id.* at 12, ¶ 17(ii); and (2) accessible guest rooms were not offered in "various classes of sleeping accommodations, violating 2010 ADAS 224.5 and 1991 ADAS 9.1.4(1)," *id.* at 12, ¶ 17(jj).

On April 22, 2026, Mortland filed a complaint against Heta for (1) violation of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*; (2) denial of full and equal access under Ohio Rev. Code § 4112.02 *et seq.*; and (3) violation of the Ohio Consumer Sales Practices Act (the "OCSPA"), O.R.C. § 1345 *et seq.*; seeking injunctive relief, attorneys' fees, and compensatory and punitive damages (the "Complaint"). ECF Doc. 1. On July 20, 2026,

Heta moved to dismiss the Complaint, under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), for lack of standing and failure to state a claim. ECF Doc. 5. In response, Mortland filed the FAC, pursuant to Fed. R. Civ. P. 15(a)(1)(B). ECF Doc. 7.

As Heta notes, and Mortland does not deny, Mortland has filed 164 other such ADA complaints in courts across the country. ECF Doc. 8 at 4 n.2; *see also* ECF Doc. 9 at 3. This includes thirty-four other similar cases in this District since 2007.[1]

Heta contends that Mortland lacks Article III standing to bring an ADA claim, for Rule 12(b)(1) purposes, because the FAC fails to allege a concrete, particularized harm fairly traceable to Heta's alleged violations. ECF Doc. 8 at 8-13. Further, Heta argues that Mortland is not entitled to injunctive relief in the absence of a real, immediate threat of future injury given Mortland's implausible grounds to visit the Hotel again. *Id.* at 14. In addition, Heta argues that the FAC fails to state a claim under Rule 12(b)(6) because it does not provide sufficient factual allegations connecting an alleged barrier to alleged harm. *Id.* at 16. Also, Heta notes that Mortland's lack of

[1] Northern District of Ohio cases: *Disabled Patriots of Am., Inc. v. Reserve Hotel Ltd.*, No. 1:07-cv-713 (filed Mar. 12, 2007); *Disabled Patriots of Am., Inc. v. First States Investors LLC*, No. 1:07-cv-717 (filed Mar. 12, 2007); *Disabled Patriots of Am., Inc. v. Rukshmani, Inc.*, No. 1:07-cv-1749 (filed June 13, 2007); *Disabled Patriots of Am., Inc. v. Toledo Nights, Inc.*, No. 3:07-cv-2768 (filed Sept. 13, 2007); *Mortland v. Mansfield Hotel, LLC*, No. 1:15-cv-506 (filed Mar. 17, 2015); *Mortland v. Vikash Corp.*, No. 3:19-cv-675 (filed Mar. 27, 2019); *Mortland v. Boardman Hospitality, LLC*, No. 4:19-cv-1537 (filed July 5, 2019); *Mortland v. Hotel Stow L.P.*, No. 5:19-cv-2019 (filed Sept. 3, 2019); *Mortland v. Stow Hotel Assocs. LLC*, No. 5:19-cv-2082 (filed Sept. 11, 2019); *Mortland v. Mary Coyne Investments LLC*, No. 4:20-cv-15 (filed Jan. 6, 2020); *Mortland v. Riley Hotel Grp. LLC*, No. 5:20-cv-428 (filed Feb. 25, 2020); *Mortland v. VK Int'l, Inc.*, No. 4:20-cv-1052 (filed May 14, 2020); *Mortland v. Sidhu Brothers LLC*, No. 4:20-cv-1973 (filed Sept. 2, 2020); *Mortland v. Holland Hospitality LLC*, No. 3:20-cv-2567 (filed Nov. 16, 2020); *Mortland v. NAFFAH Investments, LLC*, No. 4:21-cv-894 (filed Apr. 29, 2021); *Mortland v. CPX Canton Airport LLC*, No. 5:21-cv-1311 (filed July 7, 2021); *Mortland v. Travaglini Enterprises, Inc.*, No. 4:21-cv-1322 (filed July 8, 2021); *Mortland v.Newtonfalls Hospitality LLC*, No. 4:21-cv-1916 (filed Oct. 11, 2021); *Mortland v. Om Mahate Namah Inc.*, No. 5:22-cv-402 (filed Mar. 12, 2022); *Mortland v. CFM Land Investment, LLC*, No. 3:22-cv-601 (Apr. 14, 2022); *Mortland v. Prasanna, Inc.*, No. 5:22-cv-1086 (filed June 21, 2022); *Mortland v. Perrysburg Hotels, LLC*, No. 3:22-cv-1119 (filed June 24, 2022); *Mortland v. Shree Krishna, Inc.*, No. 5:22-cv-1408 (filed Aug. 9, 2022); *Mortland v. Six Star Hospitality Grp. LLC*, No. 4:22-cv-1966 (filed Nov. 1, 2022); *Mortland v. Vik Dev LLC*, No. 4:22-cv-1968 (filed Nov. 1, 2022); *Mortland v. Falcon Plaza, LLC*, No. 3:22-cv-2080 (filed Nov. 17, 2022); *Mortland v. Wilcare Corp.*, No. 5:23-cv-2376 (filed Dec. 13, 2023); *Mortland v. Valam Hospitality, Inc.*, No. 3:24-cv-457 (filed Mar. 11, 2024); *Mortland v. Krish Dev Investments, Inc.*, No. 5:24-cv-565 (filed Mar. 26, 2024); *Mortland v. Toledo PI Acquisitions, LLC*, No. 3:24-cv-582 (filed Mar. 29, 2024); *Mortland v. Hholding, LLC*, No. 3:24-cv-678 (filed Apr. 15, 2024); *Mortland v. River Ctr., LLC*, No. 3:24-cv-2206 (filed Dec. 18, 2024); *Mortland v. Laxmi 7820 Hospitality LLC*, No. 5:25-cv-1130 (filed June 2, 2025); *Mortland v. Aum Shivaya LLC*, No. 3:26-cv-1602 (filed July 13, 2026).

standing to assert the ADA claim means this Court should not exercise jurisdiction over the remaining state law claims. *Id.* at 17. Finally, Heta argues that the FAC fails to specifically allege purported misrepresentations and causation in violation of OCSPA. *Id.* at 18.

For his part, Mortland counters that the FAC alleges concrete injuries sufficient for standing, such as difficulty in transferring, exposure to hazards, and cervical strain and shoulder inflammation. ECF Doc. 9 at 9 (citing ECF Doc. 7 at ¶ 17(a)-(b), (g), (m), (u), (y)). Next, Mortland argues that the FAC provides a definite plan to travel from his home in Franklin County, Ohio, to Macedonia, Ohio, on or before December 31, 2027, to verify compliance with another case's settlement terms, constituting a real, immediate threat of future injury at the Hotel in Mayfield Heights, Ohio. *Id.* at 13 (citing ECF Doc. 7 at 16, ¶ 30); *see also* ECF Doc. 1-2 at PageID # 29 (civil cover sheet listing county of residence). In addition, Mortland asserts that the FAC alleges violations "in minute details," listing barriers and injuries sufficient to withstand a Rule 12(b)(6) challenge. ECF Doc. 9 at 14-15 (citing ECF Doc. 7 at ¶ 17(a)-(jj)). Mortland insists he has standing and, thus, the Court has supplemental jurisdiction over the FAC's state law claims. *Id.* at 15-16. Lastly, Mortland argues that the FAC sufficiently specifies the Hotel's advertisements at issue and how the Hotel fell short of accessibility, in violation of OCSPA. *Id.* at 16-17 (citing ECF Doc. 7 at ¶¶ 12, 14, 16-17)).

## II. LAW & ANALYSIS

An action may be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for plaintiff's lack of standing. *Afridi v. Nat'l City Bank*, 509 F. Supp. 2d 655, 659 (N.D. Ohio 2007) (citing *Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536 (6th Cir. 2004); *AFGE v. Babbitt*, 46 F. App'x 254 (6th Cir. 2002)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016). A plaintiff

must suffer an "injury in fact": an invasion of a legally protected interest, which is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In addition, the injury must be "fairly traceable" to the challenged conduct and likely that a favorable decision will redress the injury. *Id.* at 560–61. The plaintiff bears the burden of proving the elements for Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021).

An action may also be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, to survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim is facially plausible when pled with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "asks for more than a sheer possibility that a Defendant has acted unlawfully." *Id.* A "naked assertion" lacking "further factual enhancement" does not rise to the level of plausibility. *Twombly*, 550 U.S. at 557. Similarly, reciting the elements of a cause of action or legal conclusions will not suffice. *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss, federal courts must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Watkins v. Healy*, 986 F.3d 648, 660 (6th Cir. 2021); *Am. Canoe*, 389 F.3d at 540. However, the court need not accept "unwarranted factual inferences." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

**A. <u>Standing</u>**

**1. *Concrete, Particularized, and Actual or Imminent Harm***

Heta argues that, because Mortland has not alleged a concrete, particularized injury, Mortland lacks Article III standing and the action should be dismissed under Rule 12(b)(1). ECF Doc. 8 at 7-13. The Court agrees. To be concrete, an injury must not be "abstract" and must "actually exist." *Spokeo*, 578 U.S. at 340. A plaintiff must demonstrate a "plausible claim" for standing. *Ass'n of Am. Physicians & Surgeons v. U.S. F.D.A.*, 13 F.4th 531, 544 (6th Cir. 2021) (citing *Iqbal*, 556 U.S. at 679)).

The FAC does not allege facts to show plausible, non-abstract harm that actually occurred. For example, Mortland's alleged injuries include prevention from maneuvering, transferring, or showering "safely." ECF Doc. 7 at 6-11, ¶ 17(a), (b), (f), (k), (l), (bb) (dd), (ee), (hh). Such allegations present non-concrete harm. First, lack of safety in such circumstances, with the context provided, is abstract and speculative. *See Brewster v. Aramark Corp.*, No. 2:14-cv-273, 2015 WL 877885, at *4-5, *11 (S.D. Ohio Mar. 2, 2015) (ruling that "genuine fear of a riot," given the presence of mold and insufficient meals as well as occurrence of riots elsewhere, is a speculative, nonconcrete injury that does not confer standing). Second, Mortland asserts that his movements were unsafe yet does not allege whether this lack of safety caused an injury. Rather, Mortland effectively alleges a *risk* of concrete harm.[2]

A "mere risk" of future harm, without more, does not constitute concrete harm necessary for Article III standing. *TransUnion*, 594 U.S. at 441. The Supreme Court has acknowledged that a "substantial risk" of harm may lead to present injuries-in-fact, such as economic harm. *Monsanto*

[2] Indeed, the Complaint used this exact language. ECF Doc. 1 at 6-7, ¶ 17(a) ("increasing his risk of tipping"); *id.* at 7, ¶ 17(f) ("increasing the risk of injury"); *id.* at 8, ¶ 17(k) ("increasing the risk of falls or injury"); *id.* at 11, ¶ 17(bb) ("increasing the risk of falls"); *id.* at 12, ¶ 17(hh) ("risking injury"). But, upon Heta's challenge, Mortland replaced such conditional terms with language suggesting that something had occurred. The Court notes that Mortland could have alleged the actual occurrence initially but did not. This amendment suggests not an initial failure of exact briefing but a belated attempt to avoid dismissal.

*Co. v. Geertson Seed Farms*, 561 U.S. 139, 153–55 (2010). But if the future injury feared is not "certainly impending," even a plaintiff's present harm in anticipation of that future injury does not constitute concrete injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013). Here, the FAC's allegations do not provide facts that show a substantial risk or nonspeculative fear of certainly imminent injury.

The FAC also alleges that Mortland "had difficulty finding suitable accessible spaces." ECF Doc. 7 at 7, ¶ 17(d). Mortland does not allege that the Hotel failed to offer accessible parking spaces. Difficulty finding parking while driving through a parking lot for an unspecified amount of time is not the same as lacking accessible parking or physical difficulty navigating a space, which resulted in injury. After all, the ADA does not guarantee expeditious location of an always-available accessible parking space, merely the presence of marked, accessible parking spaces located on the shortest accessible route to accessible entrances. *See* 28 C.F.R. §§ 36.304(b)(18), (c)(1); 2010 ADA Standards for Accessible Design 208, 502. Thus, having initial difficulty locating an accessible parking space is not a concrete injury.

Similarly, the FAC alleges that Mortland "could not *independently* access [juice] beverages, limiting his participation in breakfast offerings." ECF Doc. 7 at 9, ¶ 17(n) (emphasis added). But Mortland does not allege that he intended on consuming juice, was unable to access the beverages with assistance, or did not receive the beverages out of reach. Therefore, the FAC does not actually allege deprivation. The alleged insufficient dining surfaces in the Hotel breakfast area likewise meant that Mortland "could not dine comfortably or safely in the breakfast area, excluding him from communal dining experiences," and that Mortland "was unable to use the counter for dining or socializing, further isolating him from other guests." *Id.* at 9, ¶ 17(p), (q). Here, again, the alleged injuries are abstract. The FAC does not allege the absence of any

accessible surfaces for eating, nor does it allege actual communal dining or socialization from which Mortland was excluded.

Abstract injuries appear throughout the FAC. For instance, Mortland alleges that a guest room curtain rod was located too high for a side-approach, "limiting his control over privacy and lighting." *Id.* at 10, ¶ 17(v). However, the FAC does not allege whether the curtains were open upon arrival, reducing privacy, or alternatively whether room lighting was insufficient, necessitating open curtains for proper light. The Court struggles to ascertain how Mortland was injured. The same applies to allegations that an obstruction near the climate control unit prevented adjustment of the temperature, "affecting his comfort and independence." *Id.* at 10, ¶ 17(x). The FAC does not allege that the guest room was too hot or too cold nor in what way Mortland suffered a concrete injury. In like manner, the FAC alleges that a tower bar less than twelve inches above a rear grab bar "compromised" Mortland's ability to use the grab bar for support. *Id.* at 11, ¶ 17(cc). The implication is that a hanging towel obstructed the grab bar. Yet Mortland does not allege that he attempted to use the grab bar and was unable to because of a hanging towel, resulting in a fall. Instead, the FAC improperly relies on insinuation.

In a similar vein, the FAC alleges that the guest room toilet's flush handle was located on the toilet's side in such a way that Mortland was "unable to flush the toilet without straining his upper body to reach across the toilet to flush it therefore compromising his dignity and hygiene." ECF Doc. 7 at 11, ¶ 17(aa). Mortland has not sufficiently alleged facts to plausibly show how the Hotel toilet's flush handle could (unlike other toilets' handles) create an injury or loss of dignity. The FAC also alleges that the paper towel dispenser's mechanism and toilet seat cover dispenser were located too high, limiting Mortland's ability to "maintain hygiene" or "use restroom facilities hygienically and independently." *Id.* at 8, ¶ 17(i), (j). The FAC does not allege that paper towels

and toilet seat covers were the only means to maintain hygiene and, thus, their inaccessibility led to concrete harm. In other words, Mortland does not allege that he was forced to use the bathroom in a specific unhygienic way.

The FAC does, as Heta points out, newly allege specific cervical strain and shoulder inflammation. *Compare* ECF Doc. 1 at 7-10, ¶ 17(g), (m), (u), (y), *with* ECF Doc. 7 at 7-11, ¶ 17(g), (m), (u), (y); *see also* ECF Doc. 8 at 10. An allegation of concrete harm to demonstrate standing must be plausible. *Ass'n of Am. Physicians*, 13 F.4th at 544. Such a showing cannot rest on "general or conclusory allegations." *Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F.4th 410, 414 (6th Cir. 2021). The Court finds the allegations of strain and inflammation implausible for two reasons. One, instead of initially alleging a risk of injury, Mortland could have alleged actual strain and inflammation in the Complaint, had it occurred. Two, Mortland has allegedly encountered identical barriers and harms across the country in 164 other cases, the repetition of which would likely cause severe and easily documented injuries over time, if strain and inflammation occurred with such barriers. In short, the FAC does not plausibly allege concrete harms suffered by Mortland and fairly traceable to ADA violations.

In addition, the FAC substitutes allegations of "risk" and qualified phraseology, such as "potentially" and "may have" or "could have," with more definite language like "prevented," "hindered," and "forced." *Compare* ECF Doc. 1 at 6-12, ¶ 17(a), (b), (d), (f), (k), (m), (s), (u), (y), (z), (bb), (hh), *with* ECF Doc. 7 at 6-12, ¶ 17(a), (b), (d), (f), (k), (m), (s), (u), (y), (z), (bb), (hh). Yet these amendments do not make the alleged harms less abstract or more plausible. For example, the FAC alleges a narrow route in the breakfast area meant that Mortland "had to travel outside of the nearest accessible route to the breakfast items." ECF Doc. 7 at 9, ¶ 17(s). But Mortland does not allege that an injury occurred because of the route taken or that he was unable to reach the

items. The FAC also alleges uninsulated pipes "prevented Mr. Mortland from pulling under the lavatory and using it as intended due to the risk of burns or injury from contact with hot or sharp pipes while using the sink." ECF Doc. 7 at 8, ¶ 17(h). The alleged ADA violation did not prevent Mortland from accessing the lavatory. In addition, Mortland's perception of the risk of encountering uninsulated pipes allegedly led to Mortland's own decision not to pull under the sink. The Court does not find the allegations of injury plausible, given the ubiquity of exposed plumbing. In sum, the FAC's amendment from "risk" to alleged actual injury strains against plausibility.

The FAC's remaining allegations involve assertions of statutory violation, absent other injury. *See, e.g.*, ECF Doc. 7 at 7, ¶ 17(c) (lack of accessible route denied access to outdoor amenities); *id.* at 7, ¶ 17(e) (van stall without an accessibility sign); *id.* at 9, ¶ 17(o) (tea bags, condiments, and bowls were out of reach if approached from the side, denying access to items which Mortland may or may not have intended to use); *id.* at 10, ¶ 17(t) (inadequate floor space denied access to fitness equipment); *id.* at 10, ¶ 17(u) (alleged inability to open the fitness door denied access, despite entering fitness room); *id.* at 11, ¶ 17(z) (informational sign's characters were too short); *id.* at 12, ¶ 17(ii) (not enough accessible rooms); *id.* at 12, ¶ 17(jj) (accessible guest rooms not offered in a variety of accommodations). Without legal support, Mortland contends that being "prevented from using an amenity because of his disability has the same effect as Mortland being physically injured; the two should be treated equally here." ECF Doc. 9 at 8. This is untrue. Merely being denied access does not show concrete injury required for standing. *Spokeo*, 578 U.S. at 331 (noting that a plaintiff must show a concrete injury besides a statutory violation). The Court finds it implausible that Mortland suffered concrete injury. Instead, Mortland has elected to bring allegations of what may have occurred but did not.

In support of his allegations, Mortland misrepresents an unreported Sixth Circuit opinion. Mortland characterizes "serious difficulty when parking," "physical difficulty in ambulating," and using "a different entrance" as establishing concrete injury. *See* ECF Doc. 9 at 8-9 (citing *Jordan v. Joe B. Beasley & Assocs., L.P.*, No. 24-5122, 2024 WL 4710157, at *2 (6th Cir. Nov. 7, 2024)). The Sixth Circuit in *Jordan* did not hold that. The plaintiff alleged that barriers "endangered him, deprived him of an opportunity, and negatively affected his life." *Jordan*, 2024 WL 4710157, at *2. But the Sixth Circuit noted that the plaintiff did not allege "serious difficulty when parking," "physical difficulty in ambulating," having to enter the store through a side door because the entrance featured architectural barriers, or impact to financial concerns. *Id.* Listing facts that a plaintiff failed to allege when ruling no concrete injury existed is not the same as ruling that such facts would be sufficient to show concrete injury. *See id.* ("While these allegations are not the lone examples that can support concrete harm, they are reflective examples of the injury-in-fact inquiry we undertake.")

Distinguishing *Jordan* from other cases because Jordan did not explain "how the violation affected" him oversimplifies the facts. *See* ECF Doc. 9 at 10 (citing *Burgess v. Greater Cleveland Reg'l Transit Auth.*, No. 1:24-cv-1217, 2025 WL 1866702, at *6 (N.D. Ohio July 7, 2025)). Jordan merely encountered barriers. But Burgess alleged that, given her overactive bladder and sickle cell anemia, (1) defendant's refusal to allow Burgess to use a customer service restroom as an accommodation and (2) defendant's single lobby restroom that hosts a line of waiting employees made it "impossible" to have time to use the restroom and keep to defendant's rail schedule. *Burgess*, 2025 WL 1866702, at *5-6. The detail with which Burgess alleged her concrete injury differs patently from Jordan's or Mortland's abstract and implausible allegations.

Merely alleging "difficulty when parking" or "difficulty in ambulating" does not equate to alleging specific facts that show a concrete injury. Difficulty ambulating "due to excessive slopes" in front of a store can be ascertainable as a concrete injury. *See Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 578–80 (6th Cir. 2014). In contrast, difficulty ambulating because "[n]one of the access aisles provided the minimum required width of 8 feet" or because the lot's asphalt had cracks does not similarly demonstrate the concreteness of the alleged injury.

Mortland also cites several opinions outside the Sixth Circuit to support the contention that encountering noncompliant barriers constitutes a concrete injury. ECF Doc. 9 at 5-6 (citing *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945, 950–51 (9th Cir. 2011); *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 455 (4th Cir. 2017)). These cases are nonbinding. In addition, the Court disagrees with their reasoning.

The Ninth Circuit concluded that, because the ADA defines discrimination as interfering with full and equal enjoyment of a facility, encountering noncompliant barriers that interfere with access constitutes an injury in fact. *Chapman*, 631 F.3d at 945–48 (citing 42 U.S.C. § 12182(a); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n.5 (9th Cir. 2011)). In a similar spirit, the Fourth Circuit held that encountering barriers to access, which required plaintiff to exercise "extra care," constituted concrete injury that was not "conjectural or hypothetical." *Nanni*, 878 F.3d at 455. These opinions run counter to the Supreme Court rule: a bare statutory violation does not confer standing. *Spokeo*, 578 U.S. at 331. Barrier to access is the statutory violation. *See* 42 U.S.C. §§ 12182(a), (b)(2)(A)(iv)-(v). To say a barrier must interfere with access to create concrete injury is tautological; it would not be a barrier if it did not interfere. *See Chapman*, 631 F.3d at 947.

Exercising extra care or, in this case, being concerned about maneuvering safely speak to a vague sense of risk. Yet mere risk does not constitute concrete harm necessary for Article III

standing. *TransUnion*, 594 U.S. at 441. Requiring no present or certainly imminent injury besides the statutory violation negates the need for the injury-in-fact requirement. This Court is bound to follow Sixth Circuit case law, and the Court also concludes that the Sixth Circuit case law is more faithful to Supreme Court authority than is the Ninth Circuit in *Chapman* and the Fourth Circuit in *Nanni*.

Mortland directs the Court's attention to a Northern District of Indiana decision regarding similar claims brought by Mortland there. ECF Doc. 9 at 6 (citing *Mortland v. Jairaj Dupont, LLC*, No. 1:24-cv-1-CCB-SLC, 2025 WL 346493, at *2-3 (N.D. Ind. Jan. 30, 2025)). There, Mortland's allegations of physical harm were accepted as true without analysis or consideration of plausibility. *Jairaj Dupont*, 2025 WL 346493, at *2 ("While Jairaj Dupont expresses doubts as to Mortland's physical injuries, it is not for the Court to evaluate whether Mortland actually suffered any injuries so as to confer standing at the motion-to-dismiss stage."); *see also Mortland v. Jairaj Dupont, LLC*, No. 1:24-cv-1-CCB-SLC, 2026 WL 809371, at *3 (N.D. Ind. Mar. 24, 2026) ("No further evaluation as to whether Mortland actually suffered these physical injuries, to establish an injury in fact for purposes of standing, is necessary at the motion-to-dismiss stage."). Unlike the district court in *Jairaj Dupont*, this Court has analyzed plausibility and whether Mortland suffered an actual injury, as required by the Supreme Court. *See Iqbal*, 556 U.S. at 679; *Spokeo*, 578 U.S. at 340. A decision not to do so by a district court outside the Sixth Circuit does not persuade this Court.

Mortland also seeks to distinguish this action from another of his cases, which the Northern District of Indiana dismissed.[3] *See* ECF Doc. 9 at 11 (citing *Mortland v. IK Onkar Hospitality*

[3] Heta requests in its MTD that the Court take judicial notice of Mortland's amended complaint in *Mortland v. IK Onkar Hospitality LLC*, 775 F. Supp. 3d 1024 (N.D. Ind. 2025). ECF Doc. 8 at 2 n.1 (citing ECF Doc. 8-1 (Ex. 1)). The Court takes judicial notice, as requested, of the Northern District of Indiana's proceedings and existence of documents filed in *IK Onkar*. *See Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969) ("Federal courts may take

*LLC*, 775 F. Supp. 3d 1024 (N.D. Ind. 2025)). Mortland argues that the injuries there were "pleaded generally" and that the court found no physical injuries were alleged as resulting from the parking lot, public restroom, breakfast area, or fitness center. *Id.* (citing *IK Onkar*, 775 F. Supp. 3d at 1031–32). In contrast, Mortland contends, the FAC "ties specific physical injuries to specific barriers" in various areas of the Hotel. *Id.* (citing ECF Doc. 7 at ¶ 17(g), (m), (s), (u), (y)). Heta counters that the FAC and the *IK Onkar* complaint are "almost identical." ECF Doc. 10 at 3. Heta also notes that the *IK Onkar* court characterized the alleged injuries as lacking "the concreteness and particularity necessary." ECF Doc. 8 at 11 (citing *IK Onkar*, 775 F. Supp. 3d at 1031).

Indeed, the Northern District of Indiana noted that the complaint there "merely states that his encounters with the [sic] some of the violations injured his shoulders, back, neck, and spine." *IK Onkar*, 775 F. Supp. 3d at 1031. Likewise, here, the FAC merely states that encounters with some violations injured Mortland's shoulders and neck. *See* ECF Doc. 7 at 7-11, ¶ 17(g), (m), (u), (y). Therefore, Mortland's attempt to distinguish this case from the dismissal in *IK Onkar* fails. Unlike allegations that a single restroom with long lines prevented use for a plaintiff with an overactive bladder in *Burgess*, Mortland's allegations of cervical strain and shoulder inflammation due to ambulating and opening doors do not plausibly present a specific concrete injury caused by a violation that could be redressed by injunction. *See Burgess*, 2025 WL 1866702, at *5-6.

Finally, Mortland's invocation of case law—to suggest that encountering items mounted too high constitutes concrete injury—does not persuade the Court. ECF Doc. 9 at 6-7 (citing *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 757, 761 (6th Cir. 2019)). First, unlike the complaint in *Mosley*, the FAC did not allege that the Hotel's sinks, mirrors, or toilet paper

judicial notice of proceedings in other courts of record."). However, the Court does not take judicial notice of the truth of the facts alleged therein. *See Hancock v. Miller*, 852 F. App'x 914, 919 (6th Cir. 2021) (noting that, in taking judicial notice, courts must consider only a document's existence, not accept the truth of the facts asserted therein).

dispensers were mounted too high for use. *See* ECF Doc. 7 at 8, 11-12, ¶ 17 (allegations related to use of restrooms); *Mosley*, 942 F.3d at 755, 757. Second, while the Sixth Circuit in *Mosley* found plaintiff's "serious difficulty" plausible enough to accept allegations that defendant denied full and equal enjoyment, the FAC here has not alleged facts sufficient for this Court to reasonably infer "serious difficulty" or denial of full and equal enjoyment. *See Mosley*, 942 F.3d at 757 (citing *Gaylor*, 582 F. App'x at 579–80). Therefore, *Mosley* is not instructive given the facts and circumstances here.

Apart from the alleged injuries above, alleged intangible injuries and litigation costs were effectively withdrawn. ECF Doc. 9 at 11 ("Mortland does not rely on emotional distress or litigation expenses as his injury in fact; his physical and access injuries suffice."). For the foregoing reasons, Mortland has not alleged concrete, particularized, and actual or imminent injury.

**2. *Real, Immediate Threat of Future Injury***

To have standing to seek injunctive relief pursuant to the ADA, a plaintiff must also demonstrate a "real and immediate threat of future injury." *Mosley*, 942 F.3d at 756. The threat must not be solely premised on the existence of past injuries. *Gaylor*, 582 F. App'x at 579 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983)).

Mortland argues that a threat of injury at the Hotel is real and immediate. ECF Doc. 10 at 13-14. Mortland offers several reasons. The FAC alleges that Mortland plans to visit the Hotel on or before December 31, 2027, "when he travels to Macedonia, Ohio to verify compliance" with another case's settlement terms. ECF Doc. 7 at 16, ¶ 30. But Mortland states that his reasons for returning to the Hotel "are not limited to testing." ECF Doc. 9 at 12. Alternatively, Mortland alleges that "he frequently travels to Northeast, Ohio, for work and to visit friends." ECF Doc. 7 at 16, ¶ 29. Mortland further explains that he would select the Hotel because it is "centrally located

in Cuyahoga County, has quick highway access, has a price point aligned with Mr. Mortland's budget, and is near work he will be performing." *Id.* at 16, ¶ 30. However, Mortland qualifies these plans by noting that he only intends to patronize the Hotel if Heta removes the noncompliant barriers. *Id.* at 16, ¶¶ 29, 30.

A plaintiff need not have a "definitive plan" to patronize a noncompliant facility in the future. *See Mosley*, 942 F.3d at 759. Nevertheless, plaintiffs must show more than a "some day" intent to return. *Lujan*, 504 U.S. at 564. Frequent visits and concrete plans support a plausible inference of intent to return. *Mosley*, 942 F.3d at 759–60 (citing *Lujuan*, 504 U.S. at 564). Specifically, standing plans to visit family and friends in Detroit every summer; scheduled events as a musician in Flint, Detroit, and other cities in Michigan on dates in September and October; an intent to visit family in Detroit on specific dates in November; as well as a desire to visit the stores at issue while on trips to Michigan, permitted the Sixth Circuit to reasonably infer concrete plans and a threat of future injury. *See id.* at 760–61. The FAC, in contrast, offers vague statements about work and family as well as a date of return to Northeast Ohio to visit a different accommodation. *See* ECF Doc. 7 at 16, ¶¶ 29-30. Mortland's destination of Macedonia is seventeen miles from the Hotel in Mayfield Heights. While this is not a terribly long distance, in the ordinary course, an out-of-town visitor to Macedonia would not stay in a hotel in Mayfield Heights when many hotels exist much closer to Macedonia. This makes the FAC's explanation ring hollow. Mortland's allegations do not provide enough facts to be plausible.

Moreover, Mortland's conditional plan undermines a real, immediate threat. Plaintiffs may allege an interest in visiting an accommodation "*when* it becomes ADA-compliant." *See Mosley*, 942 F.3d at 759 (emphasis added). But Mortland explicitly retracts any plans: "Plaintiff cannot return" and only plans to return "*if* it is made accessible." ECF Doc. 7 at 16, ¶¶ 29-30 (emphasis

added). This goes beyond stating that one "would return, but is deterred from visiting." *See Gaylor*, 582 F. App'x at 580. As noted above, the FAC does not plausibly allege that Mortland "would" return for work or frequent visits. And the stated December 2027 date is earmarked for a visit to a different accommodation in a different city in a different case. ECF Doc. 7 at 16, ¶ 30. This way, Mortland does not present a plausible intent to visit the Hotel.

Next, the FAC alleges that Mortland intends on returning to the Hotel post-settlement or post-resolution to ascertain whether Heta has removed the noncompliant barriers. ECF Doc. 7 at 16, ¶ 31. This plan does not establish a real threat of future injury necessary for injunctive relief in the first place. *See Lujan*, 504 U.S at 564 ("And the affiants' profession of an intent to return to the places they had visited before—where they will presumably, this time, be deprived of [access]—is simply not enough.") (cleaned up). After all, the threat of future injury that the FAC alleges would be triggered if Heta violates an injunction, not if the Court declines to issue the injunction and Heta continues to allegedly violate the ADA. Therefore, this hypothetical threat is premised on the possibility that Heta ignores the non-existent injunction and redress has failed. The FAC does not allege that Mortland plans on regular visits to the Hotel pre-injunction.

Other than mentioning testing, Mortland also does not explain what work would bring him near the Hotel, as Heta argues. *See* ECF Doc. 8 at 14. Mortland has not denied traveling as a tester. *See id.* at 15; ECF Doc. 9 at 11-12 (addressing Heta's tester argument without denying tester status). Mortland has not denied filing similar complaints in Colorado, Florida, Georgia, Indiana, Kentucky, Massachusetts, Michigan, Ohio, Pennsylvania, and Tennessee. *See* ECF Doc. 8 at 4 n.2; ECF Doc. 8-1–8-4 (Ex. 1-4) at PageID # 422-723 (similar complaints); *see also* ECF Doc. 9 at 3 (noting but not objecting to Heta's characterization of Mortland's litigation history).[4] This is

---

[4] The Court may consider evidence extrinsic to the complaint when reviewing a factual 12(b)(1) challenge. *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014); *see also* ECF Doc. 8 at 7 n.4 (characterizing Heta's Article III

a significant factor. Being a tester, as Mortland notes, does not preclude standing. *See* ECF Doc. 9 at 11-12; *see also Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 494–95 (6th Cir. 2019) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982)). However, the numerous lawsuits call into question Mortland's injuries, intent, and purported work reason for travel. A real, immediate threat of injury at the Hotel and at the facilities in Mortland's many other cases becomes implausible. *See* ECF Doc. 8 at 14; ECF Doc. 10 at 5. Because the FAC did not plausibly allege a concrete injury and a real, immediate threat of future injury, Mortland does not have Article III standing to bring an ADA claim.

**B. <u>Failure to State a Claim</u>**

Even if Mortland had Article III standing, the ADA claim cannot survive the MTD under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–56. A claim is facially plausible when pled with facts sufficient to allow the court to draw the reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. A "naked assertion" lacking "further factual enhancement" does not rise to the level of plausibility. *Twombly*, 550 U.S. at 557.

Under Title III of the ADA, a plaintiff must prove (1) disability and (2) deprivation of "full and equal enjoyment" of public accommodations. *Badri v. Huron Hosp.*, 691 F. Supp. 2d 744, 756 (N.D. Ohio 2010). An architectural barrier claim is premised on the fact that (1) the facility presents an architectural barrier prohibited by the ADA; and (2) the barrier's removal is readily achievable, or an alternative method is provided that ensures equal access. *See Spector v.*

---

argument as a factual and facial 12(b)(1) challenge). Because Heta challenges not only the sufficiency of the FAC's allegations but also the factual existence of subject matter jurisdiction, Heta presents both a facial and factual attack. *See Cartwright*, 751 F.3d at 759; ECF Doc. 8 at 10-11, 15 (questioning the factual predicates for jurisdiction related to Mortland's alleged physical injuries and tester status); ECF Doc. 10 at 4-5 (questioning the factual predicates for jurisdiction related to Mortland's alleged physical injuries and travel plans).

*Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128–29 (2005) (citing 42 U.S.C. § 12182(b)(2)(A)(iv)-(v)); *Disabled Patriots of Am., Inc. v. ODCO Investments, Ltd.*, No. 3:04-cv-7399, 2006 WL 782725, at *3 (N.D. Ohio Mr. 27, 2006); *see also Darma Canter v. HSD II, LLC*, No. 25-2008, 2026 WL 2996841, at *3 (6th Cir. Oct. 1, 2026) (noting that the barrier must have prevented the plaintiff from full and equal access). A barrier's removal is readily achievable if removal is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12189(9). In determining whether removal is readily achievable, a court will consider the nature of the required removal, cost of removal, and facility's financial resources. *See ODCO*, 2006 WL 782725, at *3-4 (citing 42 U.S.C. § 12181(9)(A)-(D)).

Heta argues that the FAC fails to state an ADA claim because Mortland does not show more than the "mere possibility" that alleged barriers prevented full and equal access. ECF Doc. 8 at 16 (citing *Iqbal*, 556 U.S. at 678–79). The Court agrees. The FAC does not meet the *Twombly*/*Iqbal* standard. Mortland's allegations of harm are conclusory, naked assertions without sufficient facts to support a plausible claim or allow this Court to draw the reasonable inference that Heta is liable. *See supra* Section II.A.1. As discussed above, Mortland has not sufficiently alleged the nature of his injuries or how the alleged violations caused those injuries. *See supra id.* The FAC simply asserts in a conclusory fashion that certain barriers caused physical injury. *See* ECF Doc. 7 at 7-11, ¶ 17(g), (m), (u), (y). The remaining allegations merely state that barriers caused abstract injuries and denial of access, without factual enhancement. *See id.* at 6-12, ¶ 17. In short, Mortland's allegations that barriers prevented his full and equal access are not plausible.

Additionally, the FAC baldly claims that the barriers' removal would be "readily achievable." ECF Doc. 7 at 19-20, ¶¶ 38-39. Mortland does not present any facts to support that conclusion. Indeed, Mortland does not address how expensive or difficult removal would be. *See*

*ODCO*, 2006 WL 782725, at *4-5 (finding the plaintiff failed to proffer enough evidence that barrier removal was readily achievable at the summary judgment stage because cost estimates were missing). In contrast, Heta underscores that Mortland's demands would require "a wholesale remodel of its Hotel based on a broad catalogue of alleged deficiencies." ECF Doc. 8 at 16-17. Mortland offers nothing to discount Heta's characterization. Accordingly, the Court cannot accept the FAC's unsupported inference that removal would be readily achievable. Thus, the FAC does not present sufficient facts to satisfy the *Twombly*/*Iqbal* standard and support the ADA claim.

### C. Supplemental Jurisdiction

As discussed above, the Court agrees with Heta that Mortland has not plausibly alleged concrete injury necessary for Article III standing nor sufficiently pled facts to state an ADA claim. *See supra* Sections II.A, B. A district court may decline to exercise supplemental jurisdiction upon dismissal of all claims over which the court had original jurisdiction. 28 U.S.C. § 1367(c)(3). With successful Rule 12(b)(1) and 12(b)(6) challenges, exercise of supplemental jurisdiction becomes less discretionary. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) (concluding that supplemental jurisdiction can "*never* exist" when federal claims are dismissed pursuant to Rule 12(b)(1) and that a Rule 12(b)(6) dismissal carries a "strong presumption" of declining supplemental jurisdiction). Because Mortland cannot bring the sole federal claim, this Court declines to exercise supplemental jurisdiction over Mortland's state law claims under Ohio Rev. Code § 4112.02 *et seq.*, and the OCSPA. Consequently, the Court will not reach the issue of Mortland's remaining claims.

## IV. CONCLUSION

For the foregoing reasons, Heta's motion to dismiss (ECF Doc. 8) is **GRANTED**. In short, Mortland has not plausibly alleged facts showing concrete injury and has not alleged facts sufficient to avoid dismissal of his ADA claim under the *Twombly*/*Iqbal* standard.

**IT IS SO ORDERED.**

Dated: October 21, 2026

*s/ Dan Aaron Polster*
United States District Judge